FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 28, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRI-STATE MEMORIAL HOSPITAL,<br><br>                    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | NO. 2:25-CV-0181-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 28). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's Motion to Dismiss (ECF No. 28) is DENIED.

## BACKGROUND

This case arises out of allegations that Plaintiff was wrongfully denied a tax refund for the first, second, and third quarters of 2021 under the Employee Retention Credit ("ERC") under the Coronavirus Aid, Relief, and Economic

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1

Security Act ("CARES act").  ECF No. 25 at 22-24; CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020); 26 U.S.C. § 3134.  Plaintiff requests attorneys' fees and costs.  ECF No. 25 at 24-25.  On January 20, 2026, Defendant moved to dismiss for failure to state a claim.  ECF No. 28.  Plaintiff opposes the motion.  ECF No. 32.

## DISCUSSION

### A. Legal Standard

For a plaintiff to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This requires more than a simple "formulaic recitation of a cause of action's elements."  *Twombly*, 550 U.S. at 545.  This requires facts to support legal conclusions beyond simply stating conclusory legal statements.  *Iqbal,* 556 U.S. at 663; *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)) (stating that for a motion to dismiss, courts are not obligated to accept alleged legal conclusions as true factual allegations);  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (stating legal conclusions must be supported by factual allegations).  However, a court must construe facts in the light most favorable to the opposing

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 2

party of the motion and a court must take the allegations of the non-moving party as true. *Twombly*, 550 U.S. at 556.

In addition, a plaintiff must "nudge[] their claims across the line from conceivable to plausible" otherwise plaintiff's complaint shall be dismissed. *Twombly*, 550 U.S. at 570. In other words, the "plausibility standard requires more than 'a sheer possibility that a defendant has acted unlawfully' but 'is not akin to a probability standard.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015)).

## B. CARES Act and ERC

In 2020, the federal, state, and local governments issued orders to stem the spread of COVID-19. ECF No 25 at 4. The federal government enacted the CARES Act in response to the COVID-19 pandemic to help businesses and individuals. ECF Nos. 25 at 4-5; 28 at 2; CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).

Pursuant to that goal, the ERC was created to provide a tax credit against applicable employment taxes for employers who paid qualified wages to their employees during the calendar quarters in 2020 and 2021. ECF No. 25 at 4-5. Under 26 U.S.C. § 3134, an eligible employer includes any employer that "was carrying on a trade or business during the calendar quarter for which the credit is

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 3

determined" and "(ii) with respect to any calendar quarter" that meets one of the three specific additional requirements. 26 U.S.C. § 3134(c)(2)(A). These additional requirements include:

> (I) the operation of the trade or business described in clause (i) is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19), ("Suspension Test")
>
> (II) the gross receipts (within the meaning of section 448(c)) of such employer for such calendar quarter are less than 80 percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019, or ("Gross Receipts Test")
>
> (III) the employer is a recovery startup business.

26 U.S.C. § 3134.

In November 2020, Governor of Washington State, Jay Inslee, issued Proclamation 20-24.2 ("Proclamation") in response to COVID-19 that imposed restrictions on healthcare facilities. ECF No. 25 at 10. Plaintiff states that the Proclamation required Plaintiff to implement "over 30 separate requirements", to adhere to guidance from state departments and the CDC regarding employee work restrictions. *Id.* Plaintiff contends, as a result, that it partially suspended operations because Plaintiff screened everyone who entered the facility. ECF No. 25 at 10. The screening process included monitoring the entrances, implementing screening procedures and isolating those who were suspected of contracting

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4

COVID-19.  ECF No. 25 at 13-16.  To ensure compliance with the CDC's protocol's Plaintiff implemented requiring testing for COVID-19 for its employees, physical distancing and other restrictions.  ECF No. 25 at 12.

Moreover, Plaintiff alleges many other actions it took to comply with Proclamation 20-24.2 including opening a vaccination clinic inside the facility and starting a vaccination hotline.  ECF No. 25 at 16, 21.  To effectuate this, Plaintiff diverted Plaintiff's resources and personnel which resulted in a partial suspension of its facility and operations.  ECF No. 25 at 16.

Plaintiff continues that in 2020 the government orders required Plaintiff to "isolate COVID-19 patients and cancel non-urgent procedures, reducing Tri-State's usable space due to social distancing and barricade requirements, limiting Tri-State's available personnel through quarantine periods and COVID-19 protocols, and tasking Tri-State with vaccinating first responders, healthcare professionals, at-risk individuals, and the general community against COVID-19." ECF No. 25 at 10.

Plaintiff states that it qualifies for the ERC "because it partially suspended its business due to government orders in the first, second, and third quarters of 2021."  ECF No. 25 at 10.  Plaintiff states that it was required to follow the orders that affected healthcare facilities to implement the restrictive infection prevention protocols.  ECF No. 25 at 17-22 (citing 26 U.S.C. § 3134(c)(2)(A)).  Additionally,

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5

Plaintiff claims that it filed its refund claim sixteen months ago, but the IRS failed to process Plaintiff's claim and did not provide any refund.  ECF No. 25 at 24.

However, Defendant alleges that Plaintiff fails to provide facts that it is eligible because it was not "partially suspended."  ECF No. 28 at 6-7.  Defendant claims Plaintiff fails to provide facts that it suspended nominal operations of its trade or business.  ECF No. 28 at 7-8.  Additionally, Defendant claims that even if the Court determines that Plaintiff's operations were partially suspended that it was not "due to" a government order.  ECF No. 28 at 14-21.  Defendant hinges these claims upon statutory interpretation.  ECF No. 28.

**C. Statutory Interpretation**

Statutory interpretation always begins with the text of the statute to determine whether it can be interpreted as plain and unambiguous.  *United States v. Torres*, 995 F.3d 695, 703 (9th Cir. 2021); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997)).  When a court determines the plain language of a statute, the court considers "the provisions of the entire law, including its object and policy, to ascertain the intent of Congress."  *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014) (quoting *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)).

Terms are typically given their ordinary meaning unless they are defined.  *Torres*, 995 F.3d at 703.  "To determine ordinary meaning, we consider dictionary

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 6

definitions." *Tomczyk v. Garland*, 25 F.4th 638, 644 (9th Cir. 2022) (quoting *United States v. Cox*, 963 F.3d 915, 920 (9th Cir. 2020)).

However, "[i]f a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity." *Holy Trinity Church v. United States*, 143 U.S. 457, 460 (1892). Specifically, "[g]eneral terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence." *Holy Trinity Church*, 143 U.S. at 461. If that is the outcome, it is "presumed that the legislature intended exceptions to its language which would avoid results of this character." *Holy Trinity Church*, 143 U.S. at 461.

Importantly, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA [Administrative Procedure Act] requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The Ninth Circuit clarified after *Loper Bright*, that deference should be given as defined in *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944). *Lemus-Escobar v. Bondi*, 158 F.4th 944, 960 (9th Cir. 2025).

In *Skidmore*, the court recognized that administration policies and guidance are not binding on the court, however, these materials may provide guidance regarding enforcement of policies. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944). The Ninth Circuit summarized that "[t]he weight given to an agency's interpretation under *Skidmore* depends on the thoroughness, consistency, and

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 7

persuasiveness of the decision itself." *Lemus-Escobar v. Bondi*, 158 F.4th 944, 960 (9th Cir. 2025).

**D. "Partial Suspension" Interpretation**

First, Defendant argues that Plaintiff does not allege facts exhibiting that it partially suspended "more than a nominal portion of its operations was suspended." ECF No. 28 at 7. Defendant states that because the statute does not define "partially suspended", it should be interpreted using the plain meaning, statutory context, and administrative guidance. ECF No. 28 at 7; 26 U.S.C. § 3134. Defendant contends that Plaintiff "does not allege cessation of a significant portion of its operations." ECF No. 28 at 10. Neither party claims that any part of the statute is ambiguous.

Plaintiff asserts that the parties agree to three terms and corresponding definitions based on the briefs: suspension, full, and partial. ECF No. 32 at 9. However, only the definition of "suspension" as "[t]he act of temporarily delaying, interrupting, or terminating something," or "[t]he state of such delay, interruption, or termination" is clearly agreed upon. ECF Nos. 28 at 8; 32 at 9 (quoting *Suspension*, Black's Law Dictionary (12th ed. 2024). Plaintiff asserts that "full" means "[c]omplete in every particular" or "a complete stoppage of operations" and that "partial" means a "portion" or "[o]f, relating to, being, or affecting only a part' not total." ECF No. 32 at 9 (citing Am. Heritage Dictionary (5th Ed. 2018))

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 8

(internal quotations omitted). Instead, Defendant only states that "full" means a "complete stoppage of operations." ECF No. 28 at 8. Additionally, Defendant continues that "[a] 'full suspension' is thus a temporary but entire cessation of business operations" and "[a] 'partial suspension' signifies a temporary cessation of a portion of operations." *Id.*

Based on the parties agreed upon definitions, the plain text of the statute, and the ordinary dictionary definitions, a "partial suspension" is a temporary delay, interruption, or termination of a portion an employer's business. The language is plain, and this interpretation is pursuant to the CARES Act and ERC's goal and does not result in absurdity. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6 (2000)).

The Court may, while conducting their own review, consider guidance that is meant to aid in the enforcement or interpretation of the statute at issue. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944). For example, Defendant used IRS Notice 2021-20, where the IRS provided additional information regarding the ERC. *Guidance on the Emp. Retention Credit Under Section 2301 of the Coronavirus Aid, Relief, & Econ. Sec. Act*, 2021-11 I.R.B. 922 (2021). The

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 9

IRS clarified, "an employer that operates an essential business may be considered to have a partial suspension of operations if, under the facts and circumstances, more than a nominal portion of its business operations are suspended by a governmental order." *Id.* This guidance clearly provides insight into how the ERC should be interpreted and considered. Accordingly, the Court recognizes its persuasiveness to this issue. The Court will adopt this interpretation because it does not contradict the agreed-upon definitions of the parties. Together, a "partial suspension" is a temporary delay, interruption, or termination of a more than nominal portion of an employer's business.

While Defendant agrees on the definition of "partial suspension", Defendant clarifies that this disruption should be comparable to a closure that surpasses basic economic impact that all employers faced during the pandemic such as increased costs or adjustments to operations. ECF No. 28 at 8. Additionally, Defendant further clarifies that the administrative guidance states that "partial suspension" means "more than a nominal portion" and results in a requirement of "a temporary closure of a significant portion of operations." ECF No. 28 at 9-10.

Plaintiff contends that Defendant's argument improperly interprets additional requirements into the language of the statute. ECF No. 32 at 4-5. The Court agrees. Defendant attempts to conflate "more than nominal" to suggest that it means "significant" and must "surpass[] basic economic impact that all

employers faced during the pandemic." ECF No. 28 at 8-10. However, the plain language and ordinary meaning of partial and nominal do not suggest either of those interpretations.

Defendant continues that if Congress intended to include every employer, it would have followed a similar structure for eligibility for the ERC as it did for the individual Economic Impact Payments ("EIPs"). ECF No. 28 at 8. The EIP statute stated "any individual other than" rather than including only respective groups. ECF No. 28 at 8. However, this interpretation relies on assumptions that most employers would be eligible if the statute is not interpreted this way. However, the statute specifies multiple requirements to be eligible for the ERC. Therefore, this argument is unpersuasive.

Moreover, Defendant claims that this legislative history and guidance support its interpretation. ECF No. 28 at 10. Defendant argues that the Joint Committee on Taxation explained the credit applicability to "employers subject to closure due to COVID-19." ECF No. 28 at 8 (citing Staff of J. Comm. On Tax, 118th Cong., General Explanation of Tax Legislation Enacted in the 117th Congress 63 (Comm. Print 2023)). Until the language is deemed ambiguous, the Court does not look to legislative history. *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014). Therefore, this argument fails.

Additionally, Defendant argues that the Generic Legal Advice Memorandum

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 11

("GLAM") addressed specific situations that were not considered partially suspended.  ECF No. 28 at 10.  Plaintiff responds that the document itself states it "may not be used or cited as precedent."  ECF Nos. 28-4 at 1; 32 at 14.  Therefore, this argument fails.

Even more, these scenarios included situations where an employer could not specific products but could sell a "significant variety of its goods" and where a different employer did meet the standard if they "were forced to secure alternative suppliers and incur a 35% increase in costs for critical materials."  ECF No. 28 at 10.  However, these situations are not comparable or persuasive.

Next, Defendant looks to the title of the act to further support its arguments that "Employers Subject to Closure Due to COVID-19" suggests that Congress meant for "suspension" to mean "closure."  ECF No. 28 at 9.  Moreover, if the title was a textual hint that suspension meant closure, it would then not be applicable to the other methods of eligibility.  It is more likely that the use of "closure" in the title of the statute is used to recognize closure and other disruptions.

Defendant continues that the Gross Receipt's Test in the statute provides a different avenue for eligibility if the employer did not meet the partial or full suspension test.  ECF No. 28 at 9.  This inclusion shows that the suspension requirement was intended to be read narrowly.  ECF No. 28 at 9.  Defendant responds that under Plaintiff's interpretation, it would render the Gross Receipts

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 12

Test superfluous.  ECF No. 37 at 5.

However, even Defendant's own argument is contradictory.  "Under the Gross Receipts Test, an employer who did not experience even a partial suspension of operations but had a certain reduction in gross receipts during the pandemic would qualify for the same amount of ERC as if a government order had suspended the employer's operations."  ECF No. at 3.  Under the Gross Receipts Test, the act allows for employers who experienced a decrease in Gross Receipts regarding "wages paid after June 30, 2021, and before October 1, 2021" to be an eligible employer under the tax credit.  § 3134(n).  As Defendant points out, this section recognizes that an employer may be economically affected without any partial or full suspension of trade or business operations due to a government order.  Considering the Gross Receipts Test is by Defendant's admission, another method to qualify under for the credit, the fact an employer can be eligible and affected without partial or full suspension is reasonable.  This does not make the Gross Receipts Test superfluous with the plain language interpretation of "partial suspension" but instead logical within the scope of the act.

**E. Plaintiff's Alleged "Partial Suspension"**

Now that the plain language interpretation of "partial suspension" is determined whether Plaintiff alleges sufficient facts to survive dismissal under this interpretation is still to be determined.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 13

As previously stated, Plaintiff alleges that it was "forced to cancel non-urgent services, surgeries, and procedures when surge limits were exceeded." ECF No. 32 at 15. This "resulted in approximately $4.6 million less than anticipated in-patient revenue for 2021." ECF No. 32 at 16. This demonstrates an interruption and stoppage of Plaintiff's business of conducting specific procedures.

Next, Plaintiff states that it was required to continuously monitor different hospital metrics to ensure it was maintaining "surge capacity." ECF No. 32 at 16. Plaintiff was required to "materially limit the number of non-essential procedures it scheduled in 2021" and "non-essential procedures" to ensure compliance. ECF No. 32 at 16 (citing ECF No. 25 at 12). This limitation was due to the government order that "required the hospital to cancel patient visits when patients exhibited COVID-19 symptoms or tested positive within 10 days of an appointment, which resulted in lost patient visits and revenue" because Plaintiff could not reschedule another patient in place of the cancelled appointment. ECF No. 32 at 16.

Additionally, Plaintiff exemplifies interruption of business operations because of limitations and additional protocols. ECF No. 32 at 17. For example, Plaintiff alleges that it reduced patient beds and visits. *Id.* Plaintiff was required to isolate and examine individuals in single closed rooms instead of allowing an additional patient to co-habitat the room as normal. *Id.* If a room housed a patient infected with COVID-19, the room was required to be specifically treated until "air

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 14

changes and specialized cleaning." ECF No. 32 at 17. Moreover, transporting patients in compliance with the new procedures required limitations to accessibility to screening and other testing treatment such as MRI and CT equipment. *Id.*

Also, Plaintiff focuses on the diversion of resources. For example, Plaintiff's Minor Care Center was accommodated to become a COVID-19 testing and vaccination clinic. ECF No. 32 at 16. The staff in this area then shifted to a different unit reducing the ability and number of patients treated daily. ECF No. 32 at 16-17. Plaintiff furthers that it was required "reduce Tri-State's available personnel through quarantine periods and COVID-19 protocols and tasking Tri-State with vaccinating first responders, healthcare professionals, at-risk individuals, and the general community against COVID-19." ECF No. 25 at 10. Accordingly, Plaintiff alleges enough facts to support the plausibility that more than a nominal portion of its operations were either interrupted or stopped due to Proclamation 20-24.2 to survive dismissal. ECF Nos. 25; 32.

Defendant contends that Plaintiff fails to state a claim because Plaintiff did not argue or provide facts that Plaintiff met the 10% threshold, as stated in the IRS Notice 20-21. ECF No. 28 at 10. Plaintiff responds that this is only administrative guidance and is not stated in the statutory text. ECF No. 32 at 13-14. Moreover, this guidance provides that if a business meets this threshold, then it meets the requirement that the business operations that were suspended were more than

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 15

nominal.  *Guidance on the Emp. Retention Credit Under Section 2301 of the Coronavirus Aid, Relief, & Econ. Sec. Act*, 2021-11 I.R.B. 922 (2021).  Plaintiff furthers that this requirement ensures eligibility but is not the only means to be eligible under the Suspension Test.  ECF No. 32 at 13-14.

The Court agrees with Plaintiff.  While the Court used this to support the interpretation of "partial suspension" and adopted a portion of that meaning, it does not require the Court to adopt additional requirements not provided for in the statute.  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Additionally, this interpretation is supported by *Stenson Tamaddon LLC v. United States Internal Revenue Serv.*, 2025 WL 1725942, at *8 (D. Ariz. June 20, 2025) which both parties used for support.  *Stenson Tamaddon LLC v. United States Internal Revenue Serv.*, 2025 WL 1725942, at *8 (D. Ariz. June 20, 2025) ("[I]t still contemplates the IRS exercising discretion in determining if other employers might nonetheless qualify based on additional "facts and circumstances.").

As a result, Plaintiff's failure to allege facts that meets this threshold does not result in a failure to state a claim.  If the court were to do this, it would read requirements into the statute that do not exist.  Instead, the IRS Notice provides a method for the test to be met not as a requirement to meet the test.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 16

All in all, Plaintiff has provided sufficient plausible facts that its operations were "partially suspended" as required under the ERC.

### F.  "Due to" a Government Order Interpretation

Second, Defendant alleges that Plaintiff does not provide facts that any alleged suspension was "due to" a government order.  ECF No. 28 at 14.  Defendant claims that "due to" should be narrowly construed and Plaintiff must exhibit that "a qualifying government order was the proximate, independent and sufficient cause of the suspension of its operations."  ECF No. 28 at 15.  Defendant replies that Plaintiff alleges facts that were not due to the government order but instead due to the COVID-19 infection and sick patients and employees.  ECF No. 37 at 8-9.  Plaintiff responds that the plain language suggests that "due to" means "because of" and must only meet the but-for causation requirement.  ECF No. 32 at 19-21.

"Due to" is not defined in the statute.  26 U.S.C. § 3134.  This Court must begin with the text of the statute to determine if the plain language is unambiguous. *United States v. Torres*, 995 F.3d 695, 703 (9th Cir. 2021).  Both Plaintiff and Defendant agree that the plain meaning of "due to" is "because of."  ECF Nos. 28 at 15; 32 at 19-21.  The meaning is plain and unambiguous.  The Court is not required to interpret this statute further. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 17

first canon is also the last: 'judicial inquiry is complete.'") (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)).

However, Defendant argues that "due to" has an expansive meaning in law. ECF No. 28 at 15 (citing *U.S. Postal Serv. v. Postal Regul. Comm'n*, 640 F.3d 1263, 1267 (D.C. Cir. 2011). Defendant contends that this includes a proximate cause requirement. ECF No. 28 at 15. This requirement means that the event must be the "proximate, independent, and sufficient cause." *Id.* Defendant relies on the Tax Code, tax case law, and administrative materials to support this interpretation. ECF No. 28 at 16.

Plaintiff states that "because of" required only a but-for causation requirement. ECF No. 32 at 19-20. Plaintiff relies on Supreme Court and Circuit Court interpretations for support. *Id.* For example, Plaintiff cites *Burrage v. United States*, 571 U.S. 204, 216 (2014), where the court recognized a "but-for" requirement for a statute stating "because." ECF No. 32 at 19.

Other Courts agree with this interpretation. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (recognizing that "because of" and similar phrases supports a "but-for" requirement); *Burrage v. United States*, 571 U.S. 204, 216 (2014); *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1209 (9th Cir. 2021) (recognizing Supreme Court precedent and follows that precedent that states that "because of" and similar language supports a "but for" causation requirement).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 18

Defendant's interpretation improperly adds words into the statute. It asks us to add words to the law to produce what is thought to be a desirable result. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (stating that wrong interpretations are typically caused by adding words "to produce what is thought to be a desirable result."). Accordingly, the Court recognizes that "due to" requires "but-for" causation.

### G. Plaintiff's Alleged "Partial Suspension" "Due to" a Government Order

Plaintiff alleged that Proclamation 20-24.2 required Plaintiff to follow the CFC's Interim Infection Prevention and Control Recommendation for Health Care Personnel during the Coronavirus Disease 2019 (COVID-19) Pandemic. ECF No. 25 at 13. Plaintiff states to ensure compliance with this, Plaintiff was "(1) limited and monitored its entrances; (2) established and implemented COVID-19 screening procedures for all persons entering the Hospital; and (3) restricted or isolated anyone with a suspected COVID-19 infection." ECF No. 25 at 14. Additionally, Plaintiff was required to execute specific procedures to prevent the spread of COVID-19 including "physical distancing, barriers, and testing." ECF No. 25 at 17. For example, Plaintiff removed 50% of its chairs in all waiting rooms. ECF No. 25 at 17. Plaintiff alleges that these procedures were to ensure compliance with Proclamation 20-24.2. In short, Plaintiff has alleged facts that but-for the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 19

Proclamation, Plaintiff's operations would not be partially suspended.

In conjunction, Plaintiff was required to administer and check for testing and results. ECF No. 32 at 23. Also, Plaintiff was required to transform its Minor Care facility to a vaccination and testing center. *Id.* The Proclamation required Plaintiff to only employ vaccinated individuals. *Id.* In short, Plaintiff was required to make these changes to ensure compliance with the Proclamation. Plaintiff alleges that these changes, diversions and interruptions were not voluntary. ECF No. 32 at 23. As a result, Plaintiff alleged sufficient facts that the interruption was caused by the Proclamation. Taking the factual allegations as true, Plaintiff's Amended Complaint survives dismissal.

Defendant states that COVID-19 was the cause and not the government orders. ECF No. 28 at 18-19. Defendant contends that the rescheduling and loss of daily employees to work due to COVID-19 illness were due to the illness not the Proclamation. ECF Nos. 28 at 18-19; 37 at 8-9. This is partially true. Some of the interruptions and diversions were caused by COVID-19 illness, however, the required protocols and procedures to comply with the Proclamation were not. The Proclamation provided the guidance and procedures that the businesses were required to adhere to and follow to be compliant with the order. Sick patients and employees alone did not require additional protocols. Based on this argument, there are not many businesses or any business that would be eligible under the

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 20

ERC at all.  Therefore, this argument fails.

Additionally, Defendant states that Plaintiff's protocols and actions are steps it would have taken regardless of the government order.  ECF Nos. 28 at 19; 37 at 9.  However, Plaintiff alleges otherwise.  ECF No. 32 at 19.  Moreover, Defendant argues that the government order did not cease operations but provided specifics to deal with patients or employees that contracted COVID.  ECF No. 28 at 18-19.  However, Plaintiff provided many additional protocols, testing procedures, reassignment of departments and restricted surgeries that provide facts supporting that the order interrupted or suspended these operations.  This is enough to survive dismissal, however, the ability for Plaintiff to provide sufficient evidence to meet this requirement is not at issue at this time.  For the same reason, Defendant's case law from a summary judgment motion is not relevant.  ECF No. 28 at 19.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Dismiss (ECF No. 28) is **DENIED.**

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED May 28, 2026.



THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 21